Andrews, J.
I am unable to concur in the conclusion reached by the learned judge at Special Term, that the claim of the defendant Haskin, for services rendered as attorney in the suit brought by the Hew York and Hew Haven Railroad Company against these plaintiffs, was barred by the statute of limitations. That action was commenced in 1851, and Haskin was retained to defend it. Issue was joined therein, *535 and in September, 1852, a motion was made by Haskin, in behalf of the defendants, to change the place of trial from Hew York to Westchester county, and, before decision, the judge before whom it was pending died. There was no further proceeding until 1862, when Haskin made a motion to dismiss the action, for want of prosecution, which was granted. This action was commenced in 1866. The judge found that the services of the defendant Haskin, rendered for these plaintiffs prior to 1853, as attorney in the action, were •reasonably worth $545; but he also found that the suit was then abandoned, and refused to allow this sum as a set-off, on the ground that the claim at the'time of the commencement of this action was barred by the statute. The authority of an attorney who is employed, to prosecute or defend a suit in the absence of special circumstances, continues by virtue of his original retainer, until it is finally determined. The contract of the attorney is entire, and the service he is to render is essentially single, although it may require distinct steps and proceedings on his part before the purpose of the employment is fully accomplished. Ho right of action accrues for each successive service in the progress of the cause, and the statute does not begin to run against his claim for compensation until his relation as attorney in the suit has terminated. The client may terminate it at his pleasure, or the attorney may do so after reasonable notice; but in the absence of proof to the contrary the presumption is that it continues until the litigation has ended. (Lush v. Hastings, 1 Hill, 656; Mygatt v. Wilcox, 45 N. Y., 306; Whitehead v. Lord, 11 E. Law and Eq., 588.) The finding of the judge that the suit was abandoned prior to 1853, is based upon the testimony of one of the plaintiffs. It appeared from his evidence that in 1852, while the motion to change the place of trial was pending, Haskin was consulted by the defendants in respect to bringing a cross action against the railroad company, and he advised them against it; and also that the litigation between them and the railroad company had better be settled. The witness, speaking of this conversation, said: *536 “ He proposed we had better settle ; let them, withdraw ; and I understood that in settling, I would pay my lawyer and they would pay theirs and let the matter drop.” And again : “ He advised me to settle if I could, and I, thought well of it; I took him as my friend, and that he advised me for the best.” And this, the witness said, was the last he heard of the suit. There was, however, no settlement made, but the case was allowed to stand without further action, by either party, until the motion for discontinuance in 1862. The relation of Haskin as attorney in the case, was not terminated by what occurred between him and his clients in 1852. He then suggested to them the basis for a settlement of the litigation, and they assented to it; but it required the concurrence of the other party before a settlement could be made, which all parties must have understood, and this was not obtained. There is nothing in the evidence to warrant the inference that the suit was then abandoned. Both parties seem to have been for some reason willing to suspend active proceedings in it, but the action was pending until the order of dismissal was entered, and up to that time neither party had by any agreement or understanding lost the right to continue the litigation. The case might, meanwhile, have been noticed for trial by the plaintiff. If this had been done, or other proceedings in the action taken, it would have been the duty of Haskins as attorney for the defendants to have taken proper measures for the protection of their interests. If ho had omitted to do so he could not have justified himself on the ground that he was no longer the attorney in the case. His authority had not been revoked, nor had he in any way divested himself of the character of attorney. His account for services had not been presented or adjusted, and he had not demanded payment. The right of Haskin to maintain an action for his services did not, under the circumstances disclosed, accrue until the suit was dismissed, in 1862, and his claim was not therefore barred when this action was commenced.
The question then arises whether it was available to him *537 by way of set-off or counter-claim in this action. The action is for the foreclosure of a mortgage brought against Haskins, the mortgagor and owner of the equity of redemption in the mortgaged premises, and one Wilkins, who as surety joined with him in the bond to secure the mortgage debt. The complaint demands the usual relief, viz., judgment of foreclosure and for the sale of the mortgaged premises, and that the obligors in the bond may be adjudged to pay any deficiency on the sale. The bond executed by the defendants is joint, and not joint and several; and the fact that Wilkins signed it as security for Haskin does not appear upon the face of the instrument but was shown by extrinsic proof.
Upon a bill filed to foreclose a mortgage in chancery, the mortgagor was allowed to set off a debt due to him from the complainant, which would have been a proper subject of set-off, in a suit brought by the complainant to recover the amount due on the mortgage. (Chapman v. Robertson, 6 Paige, 627; Holden v. Gilbert, 8 id., 208.) The chancellor, in the cases cited, regarded the right of set-off in foreclosure suits as embraced within the section of the Revised Statutes which declares that in suits in chancery for the payment or recovery of money, set-offs should be allowed in the same manner and with the like effect as in actions at law. (R. S., 174, § 40.) This section adopted the rule which had prevailed in chancery; and that court, prior to the Revised Statutes, had entertained a bill filed by a mortgagor to enforce a set-off against the mortgage. (Rosevelt v. The Bank of Niagara, Hopk., 579.) But no set-off could lie allowed in a foreclosure suit, under the Revised Statutes, which could not be had in analogous cases at law (8 Paige, 211); and assuming the section referred to to be in force, it would not authorize the defendant Haskin to set off his individual demand in an action in which others are joined with him as defendants. (2 R. S., 359, § 9.) But while, as a general principle, courts of equity follow the rules of law in enforcing set-offs, they exercise an original jurisdiction over the subject, and in cases of peculiar equity and under special cir *538 cninstanees will enforce a set-off in cases not within the letter of'the statute. (2 Story’s Eq. Jur., § 1437; Smith v. Felton, 43 N. Y., 419; Lindsay v. Jackson, 2 Paige, 580.) It is in accordance with natural equity that mutual debts should be held to apply, one against the other, and that the balance" only should be recovered. In this case the plaintiffs are seeking to enforce their mortgage against the land of the defendant Haskin, and to recover judgment on the bond for any deficiency against the defendants, one of whom is a mere surety for the debt. It is manifestly just that they should apply what they owe to Haskin in reduction of the mortgage; and the question is, whether in this action they can be compelled to do it. In Ex parte Hanson (12 Ves., 346), which was before Lord Erskine. on the petition of one H., to whom C. & P., who were bankrupts, were indebted, the petitioner was allowed to set-off his debt against the joint bond of H. & W., given to the bankrupts, upon which W. was surety, and afterward, when the case came before Lord Eldon (18 Yes., 232), he stated the ground of the decision to be that the joint bond was nothing more than a security for the separate debt of H. In Holbrook and Ferme v. The Receivers of the American Fire Insurance Co. (6 Paige, 220), a suit had been brought by the receiver of the insolvent corporation against Holbrook and Eerme, upon their joint bond given to secure a loan claimed to have been made by the corporation to Holbrook, one of the obligors, and which was also secured by his mortgage on real estate. Holbrook had a claim against the corporation for a loss upon a policy, and one of the questions presented was as to the right of Holbrook to have the amount of the loss applied upon the bond. The chancellor denied the relief in the particular case on the ground that all the creditors of the company were entitled to share in the assets of the corporation; but held that, except for this reason, the set-off should have been allowed. It was assumed that the fact that one of the obligors was surety for the other, might be shown by extrinsic evidence; and in equity this could always be done to let in a defence or *539 to establish a right founded upon that relation. (Artcher v. Douglass, 5 Denio, 509; Barry v. Ransom, 12 N. Y., 466.)
The insolvency of a party against whom a set-off is demanded is often a decisive'reason for the interposition of a court of equity; and it cannot be denied, I think, that if in this case that fact existed, in respect to the mortgagees, the set-off of the claim of the defendant Haskin ought, within the principles acted upon by courts of equity, to be allowed. Whether in the absence of that fact the relief should be granted, remains to be considered. The Code authorizes- a defendant to set up in his answer any matter constituting a defence or counter-claim. The counter-claim is defined by section 150; it must be a demand existing in favor of a defendant “against a plaintiff between whom a several judgment might be had in the action” arising out of the contract or transaction sued upon; or if the action is upon contract, any other cause of action on contract in favor of a defendant existing at the commencement of the suit. It is quite clear that there may under this section be a valid counter-claim in favor of one only of several defendants, if the action is one in which a several judgment may be had, between the plaintiff and the defendant in whose behalf the counter-claim is urged. This is a more comprehensive remedy than was given by the statute of set-offs, under which it was essential that the demand to be set-off should _ be due to all the defendants jointly; and it has been held, with, I think, entire accuracy, by the Supreme Court, that in an action against two defendants upon a joint and several obligation, an indebtedness of the plaintiff to one of them may be set up by way of counter-claim. (Newell v. Salmons et al., 22 Barb., 647, and cases cited ; see also Vassar v. Livingston, 13 N. Y, 257.)
In this ease several of the conditions to a valid counterclaim plainly exist. The action is upon contract; the mortgage is a contract by specialty, and the primary object of the action is to enforce the lien created by it. (Kersham v. Thompson, 4 J. Ch., 616; Taylor v. Root, 4 Keyes, 335.) *540 The claim to be set-off arises on contract and existed at the commencement of the suit, and an action might then have been maintained upon it. If, in addition, the action is one in which a several judgment' might be had between the plaintiffs and the defendant Haskin, all the elements of a valid counter-claim are present. The action is one, I think, in which a several judgment might be rendered, within the meaning of section 150. The mortgage is executed by the defendant Haskin alone, and is a lien upon his land, and his interests alone are affected by the foreclosure. Judgment for the sale of the' mortgaged premises might be rendered without adjudging the liability of the defendants on the bond ; and although the whole relief sought embraces a demand of judgment for a deficiency against both defendants, this relief is incidental to the main purpose of the action, and the liability of Wilkins is contingent upon the event of a sale of the land for less than the mortgage debt. It is sufficient that a several judgment might be rendered to bring the case within the section. That a joint judgment may be given does not exclude the allowance of the counter-claim. If in this case the counter-claim is rejected because the action is not one in which a several judgment can be rendered, it would be rejected also, although the mortgagees were insolvent; and so the effect of the section would be to prevent the application of the doctrine of equitable set-off to cases clearly within it. This was not, I think, the intention of the provision.
I am of opinion that the court erred in rejecting the set-off of the defendant Haskin for services as attorney in the suit mentioned, and that for this reason the judgment should be reversed and a new trial ordered, unless the plaintiffs stipulate to reduce the judgment by allowing thereon the sum of $545, and interest from July 1st, 1862; in which case the judgment is affirmed, without costs to either party in this court.
All concur.
Ordered accordingly.